**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00366-CR**
_____

**EX PARTE JULIAN HERNANDEZ**

**On Appeal from the County Court at Law No. 3**
**Jefferson County, Texas**
**Trial Cause No. 285449**

**OPINION**

This is an appeal from a denial of a writ of habeas corpus proceeding that questioned the advice the defendant was given by his attorney concerning the consequence of pleading guilty on the defendant's status as a legal immigrant. In this appeal, we consider whether further proceedings are required to allow the parties to present testimony for the trial court to consider before it determines if Julian Hernandez received ineffective assistance of counsel and, if so, whether he was prejudiced by his attorney's advice. We conclude the trial court erred by

1

considering only the record of the guilty plea hearing in deciding the disputed issues; as a result, further proceedings are required.

In July 2012, Hernandez filed an application for writ of habeas corpus claiming that his attorney failed to advise him that pleading guilty to possessing alprazolam would result in his removal from the country. *See* 8 U.S.C.A. § 1101(a)(48) (West 2005) (defining the term "conviction" for immigration purposes to include cases where the adjudication and the sentence is not imposed). Hernandez argues that had he been provided with accurate information about the immigration consequences of pleading guilty, he would not have pled guilty to possessing alprazolam. *See Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

In his application for the writ, Hernandez sought to establish that his plea counsel failed to properly advise him of the consequences of his guilty plea, making his plea involuntary, and that he was prejudiced by his attorney's incorrect advice. *See* Tex. Code Crim. Proc. Ann. art. 11.072 § 1 (West 2005) (establishing procedures for an application for a writ of habeas corpus for cases that concern orders imposing community supervision). According to the application, Hernandez's plea counsel advised him that a guilty plea to the offense at issue might result in his deportation, but did not advise him that pleading guilty would

"result in certain deportation[.]" Hernandez further alleged that "if he had been so advised by either his lawyer or [the trial] court, he would not have pled guilty but tendered defenses for the crime." Hernandez verified the statements in his application under oath.

The record reflects that Hernandez has been living in the United States since 1991, and in 2007, he became a lawful permanent resident.[1] In 2010, the State charged Hernandez with possessing alprazolam, a Class A misdemeanor. *See* Tex. Health & Safety Code Ann. §§ 481.104, 481.117(b) (West 2010). The record also shows Hernandez was admonished, in writing, that a plea of guilty "may result in your deportation, exclusion from admission to the country or denial of naturalization under federal law." *See* Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) (West Supp. 2012) (providing that prior to accepting a plea of guilty or nolo contendere the court shall admonish the defendant of the "fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law"). Hernandez chose to plead guilty to possession; however, the trial court did not pronounce a sentence.

---

[1] "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C.A. § 1101(a)(20) (West 2005).

Instead, the trial court deferred the adjudication of Hernandez's guilt and placed him on community supervision for one year. After completing the conditions that were required of him by the community supervision order, the trial court discharged Hernandez and dismissed the case.

Subsequently, Hernandez was arrested for an immigration violation—based on his guilty plea to the previously discussed drug crime—and is being held by a federal law enforcement agency, the United States Immigration and Customs Enforcement. The record from the habeas proceeding reflects that the United States is seeking to remove Hernandez from the United States because he was "convicted in the County Court of Jefferson County . . . for the offense of Possession of a Controlled Substance[.]" *See* 8 U.S.C.A. § 1227(a)(2)(B)(i) (West 2005 & Supp. 2010) (providing that "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance, . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"); *see Padilla*, 130 S.Ct. at 1477 n.1 ("[V]irtually every drug offense[,] except for only the most insignificant marijuana offenses, is a deportable offense under 8 U.S.C.[A.] § 1227(a)(2)(B)(i).").

Although the collateral consequences of Hernandez's guilty plea arose because federal law treats a deferred adjudication on a case as a conviction, that restraint may be addressed in a habeas proceeding. *See Ex parte Hargett*, 819 S.W.2d 866, 867 (Tex. Crim. App. 1991), *superseded by statute*, Tex. Code Crim. Proc. Ann. art. 11.072 (West 2005) (involving a habeas proceeding that challenged validity of applicant's guilty plea based on a claim of ineffective assistance because the plea affected the applicant's military retirement benefits). Hernandez challenged the restraint created by his guilty plea through a writ of habeas corpus, which "is the remedy to be used when any person is restrained in his liberty." Tex. Code Crim. Proc. Ann. art. 11.01 (West 2005). The writ of habeas corpus "is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint." *Id.* Under Chapter 11 of the Code of Criminal Procedure, which governs writs of habeas corpus, a "restraint" is "the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right." *Id.* art. 11.22 (West 2005). Also, under Chapter 11, a writ of habeas corpus is the appropriate vehicle to challenge "all such cases of confinement and

5

restraint[.]" *Id.* art. 11.23 (West 2005). We conclude that Hernandez may challenge the restraint at issue by filing a writ of habeas corpus.

The trial court's decision to dismiss the drug possession case after Hernandez successfully completed the requirements of his deferred adjudication did not render Hernandez's application moot. *See Tatum v. State*, 846 S.W.2d 324, 327 (Tex. Crim. App. 1993) ("A judgment of conviction for a misdemeanor offense may have detrimental collateral consequences whether or not probation is completed without a hitch or jail time is actually served."); *Ex parte Ormsby*, 676 S.W.2d 130, 131 (Tex. Crim. App. 1984) (stating that "mootness cannot prohibit a collateral attack [by habeas] if prior discharged convictions may have collateral consequences to a criminal defendant"). Thus, if Hernandez's plea was not voluntary, as he contends, and if he succeeds in proving he suffered prejudice because he received ineffective assistance of counsel, the trial court has the power to remove the restraint at issue. *See Tatum*, 846 S.W.2d at 327 (suggesting that a misdemeanor judgment could be void and collaterally attacked, whether or not a term of probation was successfully served out); *Ormsby*, 676 S.W.2d at 132 (removing restraint created by invalid conviction by ordering the habeas applicant "released from every manner of restraint in his personal liberty as a consequence of that conviction"). In cases that involve deferred adjudications, as is the case here,

6

the restraint can be removed by a trial court issuing an order vacating the applicant's plea. *See Ex parte Sudhakar*, No. 14-11-00701-CR, 2012 Tex. App. LEXIS 10068, at \*\*2-4, 16-17 (Tex. App.—Houston [14th Dist.] Dec. 6, 2012, no pet.) (mem. op., not designated for publication) (vacating plea in a misdemeanor drug case because of ineffective assistance resulting in involuntary plea where counsel failed to properly advise applicant regarding the immigration consequences of the plea).

In this case, the trial court entered an order stating that the attorney who represented Hernandez when he pled guilty "rendered all necessary paperwork in the hearing[,]" and denied Hernandez's application on its merits. The trial court did not dismiss the application as frivolous. *See* Tex. Code Crim. Proc. Ann. art 11.072 § 7(a) (West 2005) (allowing the trial court to enter an order denying the application as frivolous or to enter a written order including findings of fact and conclusions of law). To evaluate the application's merits, the trial court conducted a hearing. *See Ex parte Villanueva*, 252 S.W.3d 391, 394 (Tex. Crim. App. 2008) (noting that "a hearing held to determine whether a writ should issue or whether the merits of claims should be addressed is not the same as one that is held to resolve the merits of an applicant's allegations") (citing *Ex parte Hargett*, 819 S.W.2d at 868). It is apparent from the hearing the trial court conducted that the

7

trial court did not believe it needed to consider anything other than the written record from the proceedings that resulted in Hernandez's guilty plea. During the hearing on Hernandez's request for habeas relief, Hernandez's habeas counsel indicated that before the hearing, he inquired about having a bench warrant issued to secure Hernandez's presence, but his request was not honored; then, habeas counsel advised the court that he could get Hernandez to the hearing. At that point, the trial court responded: "No. I have reviewed your writ." Thus, it appears the trial court did not believe it should consider Hernandez's testimony about why he had chosen to plead guilty, or any testimony relevant to proving how Hernandez had suffered prejudice by following his attorney's advice.

It also appears the trial court felt the testimony of the attorney who represented Hernandez when he pled guilty was unnecessary. The record of the habeas proceeding reflects that habeas counsel advised the trial court that Hernandez's plea counsel told Hernandez before he pled guilty that his guilty plea may result in his deportation. When habeas counsel asked to present evidence on the issue of prejudice by affidavit, the trial court stated: "I will stipulate to the written documents that you have cited. They speak for themselves." This exchange reinforces our conclusion that the trial court thought that the issues in dispute could be resolved by examining the existing record, and that testimony was unnecessary.

For example, during the habeas hearing, the trial court stated that it was not interested in hearing testimony, stating that "any decision I make would be exclusively on the documentation." Despite habeas counsel's offers to develop the record, the record before us reflects that no witnesses testified during the habeas hearing. After denying Hernandez an evidentiary hearing, the trial court denied Hernandez's request for relief.

Shortly after the habeas hearing, and before the trial court entered an order denying the writ on the merits, habeas counsel filed an offer of proof. The offer of proof reflects that habeas counsel requested but was denied a bench warrant that was intended to require Hernandez to appear at the habeas hearing. The offer of proof reiterates that Hernandez's plea counsel failed to advise Hernandez that choosing to plead guilty made his deportation certain. The offer of proof also asserts that Hernandez would not have pled guilty had he known he would be deported. On the afternoon after the offer of proof was filed, the trial court issued an order denying Hernandez's writ.

After Hernandez appealed, we abated the appeal and asked the trial court to enter findings of fact and conclusions of law. *See* Tex. R. App. P. 31.3. Subsequently, the trial court found that it had not "wrongfully exclude[d] evidence or testimony[]" and that Hernandez had the burden of proof. Then, the trial court

9

concluded that Hernandez "failed to [sustain] his burden of proof[.]" Although the findings made clear that the trial court decided the writ on the merits, it is not clear whether the trial court found that Hernandez failed to prove that he received inaccurate legal advice regarding the consequences of the plea to his status as an immigrant, or that he failed to prove he was prejudiced by his attorney's inaccurate advice, or both. Nevertheless, our disposition of Hernandez's appeal does not depend on whether the trial court ruled against Hernandez on one or both of these issues.

Generally, a trial court's decision on an application for writ of habeas corpus is reviewed for abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). With respect to an evidentiary ruling, the evidence introduced in a hearing is reviewed in the light most favorable to the trial court's ruling. *Id.* The two-pronged *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel for failing to provide accurate information about the immigration consequences of a plea. *Padilla*, 130 S.Ct. at 1482-84 (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To obtain habeas relief on the ground of ineffective assistance, a defendant must show that his counsel's representation fell below the standard of prevailing professional norms; he must also show that but for counsel's

deficiency, the result of the trial would have been different. *See Strickland*, 466 U.S. at 687.

To prove a guilty plea was involuntary because of ineffective assistance, a defendant must show (1) counsel's plea advice did not fall within the range of competence demanded of attorneys in criminal cases; and (2) there is a reasonable probability that, but for counsel's deficient performance, defendant would have insisted on going to trial rather than accepting the offer and pleading guilty. *Hill v. Lockhart*, 474 U.S. 52, 56, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). If plea counsel fails to advise a noncitizen defendant about deportation consequences that are "truly clear," plea counsel's performance is deficient. *See Padilla*, 130 S.Ct. at 1483; *Aguilar v. State*, 375 S.W.3d 518, 524 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).

In this case, the trial court apparently did not believe that any testimony was necessary to decide the issues raised by Hernandez's writ, as it refused counsel's offer to provide testimony to prove the allegations that led to the filing of the writ. After limiting the evidence that it would consider, the trial court denied the writ on the merits, basing its decision on a failure of proof. In our opinion, the issues raised by Hernandez in his application allowed the parties to develop the record beyond

the written record of the prior plea proceedings, and a further development of the record is required so the trial court may make an informed decision on the issues in dispute. The trial court, under the circumstances, had several options to allow Hernandez's testimony to be placed in evidence before deciding how to rule on the writ: it could have conducted an evidentiary hearing and allowed Hernandez and others the opportunity to testify; or, if Hernandez's actual appearance was impractical because he is being detained by federal authorities, the trial court could have allowed the parties to take Hernandez's deposition and present it during the hearing; or, the trial court could have allowed Hernandez to present his sworn testimony by teleconference. Instead, the trial court failed to provide habeas counsel with an adequate opportunity to develop the record with evidence relevant to the issues in dispute.

Under Rule 31.2, the "sole purpose of the appeal [of a habeas matter] is to do substantial justice to the parties." Tex. R. App. P. 31.2. Rule 31 expressly applies to article 11.072 writs of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.072 § 8 (West 2005). Rule 31.3 goes on to provide that "[t]he appellate court will render whatever judgment and make whatever orders the law and the nature of the case require." Tex. R. App. P. 31.3. When a habeas record requires factual development, the Code of Criminal Procedure empowers the trial court to

12

"order affidavits, depositions, interrogatories, or a hearing, and [the court] may rely on the court's personal recollection." Tex. Code Crim. Proc. Ann. art 11.072 § 6(b) (West 2005).

An appellate court may remand a habeas proceeding to the trial court for further proceedings if the factual record has not been sufficiently developed. *See Ex parte Cherry*, 232 S.W.3d 305, 308 (Tex. App.—Beaumont 2007, pet. ref'd). Additionally, an appellate court may remand where, as here, the record is not sufficiently developed regarding alleged prejudice. *See Aguilar*, 375 S.W.3d at 526 (remanding a habeas proceeding for development of record regarding alleged prejudice).

We conclude the trial court erred by announcing that it would not consider anything but the record of the prior proceedings and then ruling on the application's merits. We hold the trial court improperly restricted the evidence to the prior plea proceedings in face of habeas counsel's efforts to offer other clearly relevant evidence. Because the trial court unduly restricted the development of the record, the trial court should be required to conduct further proceedings to allow Hernandez and the State to develop relevant evidence addressing the issues in dispute. *See Ex parte Sudhakar*, 2012 Tex. App. LEXIS 10068, at **16-17 (mem. op., not designated for publication). Accordingly, we reverse the trial court's order

13

denying the writ and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on November 1, 2012
Opinion Delivered March 27, 2013
Publish

Before McKeithen, C.J., Kreger, and Horton, JJ.

14

I respectfully dissent. When the law is not succinct and straightforward, a defense attorney need only advise a noncitizen client that pending criminal charges may carry a risk of deportation. *Padilla v. Kentucky*, 130 S.Ct. 1473, 1483, 2010 U.S. LEXIS 2928, 176 L.Ed.2d 284 (2010). If a deportation consequence is truly clear, such as when the client is subject to automatic deportation, the duty to give correct advice is equally clear, and constitutionally competent counsel must advise the client accordingly. *Id*. at 1478, 1483. The defendant must prove, by a preponderance of the evidence, that there is a reasonable probability that, but for counsel's advice, he would not have pleaded guilty and would have insisted on going to trial. *Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd). Further, the defendant must show that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 130 S.Ct. at 1485.

In its findings of fact, the trial court stated that: (1) pursuant to a plea bargain agreement, Hernandez pleaded guilty to misdemeanor possession of a controlled substance; (2) Hernandez was placed on deferred adjudication community supervision for one year; (3) after his discharge from community supervision, Hernandez filed his application for writ of habeas corpus; (4) in his application, Hernandez alleged that he was not properly advised regarding

15

deportation; (5) a habeas corpus hearing took place; (6) the trial court did not wrongfully exclude evidence or testimony; and (7) the applicant in a habeas corpus proceeding bears the burden of proof. In its sole conclusion of law, the trial court held that Hernandez failed to sustain his burden of proof; thus, all relief sought should be denied.

The record contains signed misdemeanor plea admonishments, which included the following: "If you are not a U.S citizen, a plea of guilty or nolo contendere may result in your deportation; exclusion from admission to the country or denial of naturalization under federal law." The applicable federal law provides, in pertinent part, that any alien in and admitted to the United States shall be removed if the alien has been convicted of a violation of any state law or regulation relating to a controlled substance. 8 U.S.C.A. § 1227(a)(2)(B)(i) (West 2005 & Supp. 2010); *see Padilla*, 130 S.Ct. at 1477 n.1 ("[V]irtually every drug offense[,] except for only the most insignificant marijuana offenses, is a deportable offense under 8 U.S.C.A. § 1227(a)(2)(B)(i)."); *see also* 8 U.S.C.A. § 1101 (a)(48) (West 2005) (Defining the term "conviction"). In some cases, removal may be cancelled, but the record does not indicate that Hernandez qualified for cancellation. *See* 8 U.S.C.A. § 1229b(a) (West 2005). Under these circumstances, I agree that the general admonishment that Hernandez "may" be subject to deportation was

16

insufficient to inform Hernandez that his guilty plea to possession of a controlled substance subjected him to presumptively automatic deportation. *See Padilla*, 130 S.Ct. at 1478, 1483; *see also Aguilar v. State*, 375 S.W.3d 518, 524 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Citing *Aguilar*, Hernandez contends that trial counsel's deficiency entitles him to either habeas relief or remand for an evidentiary hearing. In *Aguilar*, the defendant submitted an affidavit stating that counsel told him that his guilty plea could result in deportation, but failed to inform him that the plea would make deportation presumptively mandatory. *Aguilar*, 375 S.W.3d at 520. Aguilar averred that, had counsel advised him that his guilty plea would make deportation presumptively mandatory, he would not have pleaded guilty and would have insisted on a trial. *Id*. He explained that residence in the United States was the most important thing to him with respect to the underlying case. *Id*. Aguilar also provided trial counsel's affidavit, in which counsel stated that he did not advise Aguilar whether a guilty plea would have immigration consequences. *Id*. After finding counsel's performance deficient, the Fourteenth Court of Appeals found the record only marginally developed and remanded the case for an evidentiary hearing to determine prejudice. *Id*. at 526.

In her dissent, Justice Frost stated that Aguilar should not receive a second chance to prove entitlement to habeas relief. *Id.* at 527 (Frost, J., dissenting). She noted the minimal amount of evidence before the trial court, as well as Aguilar's failure to present evidence of a plausible defense or evidence that rejecting the proffered plea bargain would have been rational. *Id.* at 528-29. She explained that Texas Rule of Appellate Procedure 43.3, which allows remand in the interests of justice, does not allow appellate courts to reverse "an error-free judgment in the interests of justice or for further proceedings on remand." *Id.* at 529-30. Nor did she believe that an error-free judgment may be reversed simply because the case involves a developing area of the law. *Id.* at 530. Justice Frost explained that *Padilla* does not support the proposition that an intermediate appellate court can reverse an error-free judgment denying habeas relief and remand to give the applicant a second chance to prove entitlement to relief. *Id.* Justice Frost maintained that the trial court did not abuse its discretion by impliedly finding Aguilar failed to prove that a decision to reject the plea bargain would have been rational. *Id.* at 528-30. Justice Frost concluded that the trial court's judgment should have been affirmed. *Id.* at 530.

*Aguilar* is not controlling authority in this Court. *See Cannon v. State*, 691 S.W.2d 664, 679-80 (Tex. Crim. App. 1985). Moreover, I find Justice Frost's

18

reasoning to be more persuasive. This Court has held that the trial court may be capable of resolving the merits of the defendant's claim without the necessity of conducting an evidentiary hearing. *Ex parte Alfaro*, 378 S.W.3d 677, 679-81 (Tex. App.—Beaumont 2012, no pet.).

In this case, the record contains the arresting officer's affidavit, in which the officer described observing a vehicle, being driven by a Hispanic male, swerving on the roadway. The driver was later identified as Hernandez. When preparing to initiate a traffic stop for failure to maintain a single lane, the officer observed two clear plastic bags fly out of the driver's side window. The officer activated the patrol car's overhead lights and, when the vehicle stopped, the officer saw three male Hispanic occupants. The officer arrested Hernandez for littering. Another officer retrieved the plastic bags, one of which contained a green leafy substance and the other of which contained pills. The officers searched the vehicle and found more pills in a container. The green substance tested positive for marijuana and the pills were identified as alprazolam. The State charged Hernandez with possession of a controlled substance, alprazolam. Hernandez presented no evidence, in his application for writ of habeas corpus or at the hearing, to establish the existence of a plausible defense to the charges against him or to establish that a decision to

reject the plea bargain would have been rational.[2] He did not object at the hearing to proceeding without testimony. Had Hernandez rejected the plea bargain, proceeded to trial, and been convicted, he would have faced both confinement and the risk of automatic deportation.

Under these circumstances, the trial court could reasonably conclude, without an evidentiary hearing, that Hernandez failed to sustain his burden of proving, by a preponderance of the evidence, that there is a reasonable probability that, but for his counsel's advice, he would not have pleaded guilty and would have insisted on going to trial. *See Padilla*, 130 S.Ct. at 1485; *see also Ali*, 368 S.W.3d at 835. Viewing the facts in the light most favorable to the trial court's ruling, I cannot agree that the trial court abused its discretion by denying Hernandez's application for habeas corpus. *See Ex parte Klem*, 269 S.W.3d 711, 718 (Tex. App. —Beaumont 2008, pet. ref'd). I would overrule Hernandez's sole issue and affirm the trial court's judgment.

---

[2]After the hearing and the trial court's denial of his application, Hernandez filed an offer of proof to show what he would have testified to had the trial court issued a bench warrant and to show what his trial counsel would have testified to at the hearing. We review the record as it existed before the trial court at the time of the hearing. *Ex parte Coleman*, 350 S.W.3d 155, 160 (Tex. App.—San Antonio 2011, no pet.). Thus, we do not consider evidence filed after the trial court ruled on Hernandez's application.

 

 

_____
STEVE McKEITHEN
Chief Justice

Dissent Delivered
March 27, 2013